[Cite as *Mantua Twp. Bd. of Trustees v. Ent. Landscape & Hauling, L.L.C.*, 2020-Ohio-1293.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| MANTUA TOWNSHIP BOARD OF TRUSTEES, | : | **O P I N I O N** |
| | : | |
| Plaintiff-Appellee, | : | **CASE NO. 2019-P-0088** |
| | : | |
| - vs - | : | |
| ENTERPRISE LANDSCAPE & HAULING, LLC, | : | |
| | : | |
| Defendant-Appellant. | : | |

Civil Appeal from the Portage County Court of Common Pleas, Case No. 2017 CV 00236.

Judgment: Affirmed.

*Victor V. Vigluicci,* Portage County Prosecutor; *Christopher J. Meduri* and *Brett R. Bencze,* Assistant Prosecutors, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Douglas M. Kehres,* 638 West Main Street, Ravenna, OH 44266 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Enterprise Landscape & Hauling LLC, appeals from the judgment of the Portage County Court of Common Pleas, adopting the magistrate's decision, after a trial to the bench, enjoining it from conducting commercial business activities on certain real property, in violation of the Mantua Township Zoning Resolution ("MTZR"). For the reasons discussed in this opinion, we affirm.

{¶2} Appellant is a tree service and landscaping company. In 2015, Mark Miller, appellant's owner and president, commenced an inquiry into purchasing a 24.5-acre parcel of real property located at 2748 State Rt. 82, in Mantua Township. The property included a 40' by 68' building and several greenhouses. The property is zoned Residential 2 ("R-2"), which does not permit the operation of a tree service or landscaping business. While negotiating to purchase the property, Mr. Miller discussed the property's former use with the president of the company which owned the same, Doug Brown. Mr. Brown stated he had operated a landscaping company off the property from 1988 through 2015. In 1990, the building on the property was erected to support the business. While records demonstrated the construction was permitted as an exempt "agricultural use," Mr. Brown stated he used the building as an office for his landscaping company, as well as a storage facility for his commercial activities. According to Mr. Brown, business substantially dropped off around 2008 and, as a result, activity on the property has been sparse since that time. Mr. Miller also claimed he spoke with the Mantua zoning inspector, who indicated appellant could use the property to operate its business. Ultimately, in April 2015, appellant, via Mr. Miller, purchased the property and commenced running its business.

{¶3} Mr. Miller subsequently subdivided the land into two lots, on one parcel, approximately five acres in size, he began the construction of a residential dwelling. The balance of the subject property was used to operate appellant's business. Appellant keeps several commercial vehicles and various types of equipment on that property; appellant has also brought debris from tree-service jobs onto the property as well as large piles of logs. Neighbors to the east and west of the subject property assert

2

that since appellant purchased the property, its appearance has significantly altered into an "unsightly" "eye sore."

{¶4} In August 2015, appellant and Mr. Miller received a notice of zoning violation from the Mantua Township zoning inspector. In light of the zoning concern, Mr. Miller applied for conditional-use certificate. Mr. Miller requested a conditional-use permit to "operate landscaping/tree service business." Mr. Miller attached a document to the application which described his business as "Landscaping: hardscraping, mulching, edging, planting trees and shrubs" and "Tree Service: Removals, trimming, shaping, stump grinding, crane sales, splitting depending on material or time. Mulch, yards ground in February for 2 days and used for landscaping customers." The Matua Township Board of Zoning Appeals held a hearing on Mr. Miller's request but denied the application. The board determined that because the code does not allow for commercial use and the request was not an appropriate conditional use, it could not grant Mr. Miller's request.

{¶5} On March 7, 2017, appellee, Mantua Township Board of Trustees, filed a complaint in the Portage County Court of Common Pleas seeking injunctive relief against appellant. The matter proceeded to trial before the magistrate. Prior to issuing a decision, the magistrate resigned. A new magistrate was appointed, and the parties agreed to permit this magistrate to decide the matter on the record. On March 28, 2019, the magistrate issued a decision granting appellee injunctive relief. Objections were filed, which the trial court overruled. The magistrate's decision was accordingly adopted in full. This appeal follows. Appellant assigns three errors; its first provides:

3

{¶6} "The trial court erred in granting appellees' request for injunctive relief and abused its discretion."

{¶7} A trial court's award of injunctive relieve is reviewed for an abuse of discretion. *Perkins v. Quaker City*, 165 Ohio St. 120, 125 (1959). In order to find error under an abuse-of-discretion standard, the reviewing court must find that there "is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive * * *." (Emphasis sic.) *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990).

{¶8} Appellant argues that, pursuant to R.C. 519.16, the individual vested with authority to enforce a zoning resolution is the zoning inspector. Appellant argues there was no evidence offered from appellee's zoning inspector pertaining to a violation. Without such evidence, appellant contends there was no credible evidence to support the magistrate's decision and the court's adoption of the same. Rather, in appellant's view, the evidence demonstrated that the property had been used as a nursery and a commercial landscaping business from 1988 through 2015; and, because appellant's use was consistent with the previous use, appellant concludes the trial court erred in adopting the magistrate's decision. We do not agree.

{¶9} First, R.C. 519.16 provides:

{¶10} For the purpose of enforcing the zoning regulations, the board of township trustees may provide for a system of zoning certificates, may establish and fill the position of township zoning inspector, together with assistants as the board deems necessary, may fix the compensation for those positions, and may make disbursements for them. The township fiscal officer may be appointed secretary of the township zoning commission, secretary of the township board of zoning appeals, and zoning inspector, and the fiscal officer may

4

receive compensation for the fiscal officer's services in addition to other compensation allowed by law.

{¶11} While the foregoing statute vests authority in the board of township trustees to establish and fill the position of township zoning inspector, that authority is discretionary. Because the authority is discretionary, we decline to accept appellant's position that the zoning inspector is the only individual to enforce the zoning code, pursuant to R.C. 519.16. Regardless, appellee submitted evidence that the Mantua Township Zoning Inspector, in August 2015, cited appellant with a notice of zoning violation. In light of the evidence submitted supporting appellee's position that the subject property was zoned R-2 and testimony from a member of the board of zoning appeals that neither commercial landscaping nor commercial tree service was a permitted use, there was sufficient, credible evidence to support the trial court's adoption of the magistrate's decision.

{¶12} Next, appellant claims that because the subject property had previously been used for commercial purposes since 1988, and appellant's use of the property is similar to the former use, the trial court erred in adopting the magistrate's decision. Appellant's argument suggests that appellee was estopped from enforcing the violation or was precluded, pursuant to the doctrine of laches, from seeking injunctive relief. "It is well-settled that, as a general rule, the principle of estoppel or the doctrine of laches do not apply against a state or its agencies in the exercise of a governmental function. *Ohio State Bd. of Pharmacy v. Frantz*, 51 Ohio St.3d 143, 145–146 (1990) (estoppel); *Campbell v. Campbell,* 87 Ohio App.3d 48, 50 (9th Dist.1993) (estoppel and laches). Government functions are those duties that are imposed upon the state or its subdivisions as obligations of sovereignty and include such duties as protection from

5

crime, fires, or contagion, or preserving the peace and health of citizens and protecting their property. *Ohio Dept. of Natural Resources, Div. of Reclamation v. Hemlock Pipeline, Inc.*, 77 Ohio App.3d 668, 670-671 (4th Dist.1991), citing *Wooster v. Arbenz*, 116 Ohio St. 281, 284-285 (1927). "Enforcement of zoning laws is in the nature of a governmental function." *Dehlendorf & Co. v. Jefferson Twp.*, 10th Dist. Franklin No. 02AP-334, 2003-Ohio-1641, ¶68.

{¶13} Here, the evidence demonstrated that the property was zoned R-2 under both the current zoning code (effective 2012) and the previous zoning code (effective in 1988). Moreover, appellant sought, and was denied, a conditional-use permit to operate the landscaping and tree-service business. The evidence established appellant was in in violation of the Mantua Township Zoning Resolution. And even though appellant's predecessor owner may have utilized the property in violation of the zoning code for a lengthy amount of time, appellee was not barred or precluded from citing appellant with a notice of violation and seeking injunctive relief.

{¶14} Appellant's first assignment of error lacks merit.

{¶15} Appellant's second assignment of error provides:

{¶16} "The trial court erred in not finding that appellant's use of the property is a valid nonconforming use."

{¶17} Appellant asserts that Mantua Township granted zoning permits to the prior owner of the subject property in 1988 and 1990 to operate a nursery and a commercial landscape business. It notes the business continued to operate until appellant purchased the property. It additionally claims that, according to Mr. Miller, the zoning inspector assured him appellant could operate on the property in a commercial

6

capacity prior to purchasing the same. Because appellant's use of the property is essentially the same as the previous owners, and appellant was entitled to rely upon the representations of the zoning inspector, the trial court erred in concluding appellant's business operations are not a valid nonconforming use. We do not agree.

{¶18} "A use of property must be lawful at the time the use was established in order to qualify as a nonconforming use. Therefore, a use not permitted by the applicable zoning ordinance when the use was established does not constitute a nonconforming use." *Pschesang v. Village of Terrace Park*, 5 Ohio St.3d 47 (1983), syllabus. A valid nonconforming use cannot be established unless it is premised upon a lawful use. *Petti v. Richmond*, 5 Ohio St.3d 129 (1983), syllabus.

{¶19} As discussed above, the subject property was zoned R-2 in 1988 as well as in 2015. Neither appellant's predecessor's use nor appellant's use existed prior to this zoning designation; hence, both appellant's predecessor and appellant were in violation of the zoning code to the extent they conduct commercial activities, without a zoning certificate, on the property.

{¶20} Appellant, however, asserts that Mantua Township granted appellant's predecessors a permit to operate a nursery and a commercial landscaping service. The evidence does not support this assertion. Robert Stehli, a member of the Mantua Board of Zoning Appeals who considered appellant's application for a conditional-use permit, testified:

> {¶21} Mr. Miller was sold this property by a landscape company, and they only had permission to grow trees there, which is agricultural. And yet it sounded like they had convinced him that this property was actually zoned commercial. So, you know, he thought he could do more there than zoning allowed. But we went back into the history of the property, sometimes there will be what's called a

7

nonconforming use where someone has been doing this for so long that it was grandfathered in. In that case it would have had to have been done, you know, prior to the first zoning book, and there was no evidence in our records that there had been a nonconforming use. And people that knew the property, it had just been farmed. Then the other possibility was that there was - - that there actually was a conditional use permit granted at one time, but there had never been one granted. So - - and I think that the previous owners actually, you know, I'm - - I hate to say lied, but I don't know what else I could call it.

{¶22} When asked whether he knew whether appellant's predecessors were doing anything in addition to growing trees or permitted agricultural/nursery-oriented activities, he responded: "I don't know. I honestly don't know. I never went back there, so I couldn't say * * * But I will say if they were conducting any kind of business operations back there, it was illegal."

{¶23} Moreover, Doug Brown, the owner of the company from whom appellant purchased the property, bought the property in 1992 from a landscaping company that was located in Michigan. Mr. Brown worked for the Michigan company, on the subject property, from 1988 until he purchased the same. Mr. Brown testified he was not aware his use of the property for commercial landscaping was violative of zoning or otherwise problematic. In April 1990, however, the Michigan company filed an application to construct a garage/storage building for "landscaping use." The application was rejected because the property was zoned R-2. After the denial, a second application was filed for a storage building for raising nursery stock. This application was approved because raising nursery stock is an exempt agricultural use and therefore permissible, despite the R-2 designation. The evidence demonstrates, therefore, that Mantua Township had never approved an application for a commercial landscaping service to be operated on the subject property.

8

{¶24} Appellant's second assignment of error lacks merit.

{¶25} Appellant's final assignment of error provides:

{¶26} "The trial court erred in failing to find that appellant's use of the property is agriculture[al] in nature and thus exempt from the Mantua Township Zoning Resolution."

{¶27} Appellant contends that his use of the property as a landscaping and tree service is agricultural and thus, pursuant to R.C. 519.21, is exempt from zoning regulations. We do not agree.

{¶28} Under Township zoning law, R.C. 519.01 defines "agriculture," in relevant part, as follows:

{¶29} the production of field crops, tobacco, fruits, vegetables, nursery stock, ornamental shrubs, ornamental trees, flowers, sod, or mushrooms; timber; pasturage; any combination of the foregoing; and the processing, drying, storage, and marketing of agricultural products when those activities are conducted in conjunction with, but are secondary to, such husbandry or production.

{¶30} The foregoing definition does not contemplate commercial landscaping or tree services. We recognize the statute states "timber" is an agricultural activity; this court, however, has noted that "timber" under the foregoing definition relates to harvesting of timber. *See State v. Spithaler*, 11th Dist. Trumbull No. 98-T-0197, 2000 WL 263817, *3 (Mar. 3, 2000); *see also Wray v. Gahm Properties, Ltd.*, 4th Dist. Scioto No. 16CA3775, 2018-Ohio-50, ¶13 (under R.C. 519.01, inter alia, "agriculture" is defined to envelop "timber," which means "growing trees or their wood.") Appellant does not grow trees and harvest timber on the property, but rather hauls logs onto the property.

{¶31} Mr. Miller did not deny he, via appellant, operated a landscaping and tree service on the property. He additionally testified he stored a significant amount of heavy

9

equipment as well as landscaping materials, such as mulch and gravel, on the property. While he testified that he has planted ornamental trees on the property, we fail to discern how this activity transforms his commercial landscaping and tree service into an agricultural use. And, even if the planting of ornamental trees or shrubs on a property is an agricultural use, this court has held that land being used to operate a nursery is separable from a commercial landscaping business operated on the same property. In *Galbanic v. Apanius*, 11th Dist. Geauga No. 1259, 1986 WL 7281 (June 27, 1986), this court reversed the trial court's judgment, which held that, on land that was zoned residential, the operation of a nursery, an agricultural use, as well as a landscaping business, a commercial use, were inseparable. This court determined that even though the same equipment was used in both businesses, it did not render them inseparable. In light of this conclusion, this court ordered an injunction to enjoin the landscaping business but permitted the nursery. *Id.* at *2. By analogy, appellant may continue to grow its ornamental trees and shrubs; we agree, however, with the trial court that it is enjoined from operating its commercial landscaping and tree service on the subject R-2 zoned property.

{¶32} Appellant's third assignment of error lacks merit.

{¶33} For the reasons in this opinion, the judgment of the Portage County Court of Common Pleas is affirmed.


TIMOTHY P. CANNON, P.J.,

MATT LYNCH, J.,

concur.

10