[Cite as *State v. Braden*, 2017-Ohio-7903.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 17AP-48 |
| | | (C.P.C. No. 98CR-4601) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| David L. Braden, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on September 28, 2017

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Seth L. Gilbert*, for appellee. **Argued:** *Seth L. Gilbert.*

**On brief:** *Timothy Young*, Ohio Public Defender, and *Kathryn L. Sandford,* for appellant. **Argued:** *Kathryn L. Sandford.*

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, David L. Braden, appeals from an entry of the Franklin County Court of Common Pleas denying his motion to waive fines and court costs. For the following reasons, we affirm.

I. Facts and Procedural History

{¶ 2} By indictment filed August 13, 1998, plaintiff-appellee, State of Ohio, charged Braden with two counts of aggravated murder in violation of R.C. 2903.01, both unclassified felonies and both with accompanying capital and firearm specifications. Following his indictment, Braden filed an affidavit of indigency on August 17, 1998. The trial court found him indigent and appointed counsel to represent him at trial. A jury ultimately found Braden guilty of both counts and, following a mitigation and sentencing

hearing, the trial court imposed a sentence of death, journalizing Braden's convictions and sentence in a July 7, 1999 judgment entry. Additionally, the trial court ordered Braden to pay a fine of $25,000 as to each count of aggravated murder for a total fine of $50,000. At the sentencing hearing, the trial court ordered Braden to pay court costs, but the judgment entry of his conviction and sentence contains no mention of court costs.

{¶ 3} Braden appealed his convictions and sentence to the Supreme Court of Ohio. The Supreme Court affirmed his convictions and sentence. *State v. Braden*, 98 Ohio St.3d 354, 2003-Ohio-1325. Braden additionally filed a petition for post-conviction relief which the trial court denied in an August 2, 2002 decision and entry. Braden appealed the trial court's denial of his post-conviction petition to this court and we affirmed. *State v. Braden*, 10th Dist. No. 02AP-954, 2003-Ohio-2949.

{¶ 4} On November 2, 2016, Braden filed a motion to waive the fines and court costs associated with his 1999 conviction. Braden's motion additionally asked the trial court to order the prison to maintain at least $400 in his prison account or, alternatively, proposed a "payment plan" of $3 per month. Simultaneously, Braden filed an affidavit of indigency. The state filed a memorandum contra Braden's motion to vacate fines and costs, and Braden filed a reply on December 2, 2016. In a December 21, 2016 entry, the trial court denied Braden's motion to waive fines and court costs. Braden timely appeals.

## II. Assignment of Error

{¶ 5} Braden assigns the following error for our review:

> The trial court erred in failing to find that funds have been improperly taken from Braden's prison account for the payment of fines and/or court costs.

## III. Analysis

{¶ 6} In his sole assignment of error, Braden argues the trial court erred in denying his motion to waive fines and court costs. More specifically, Braden asserts the trial court should have found the Ohio Department of Rehabilitation and Correction ("DRC") was improperly taking funds from his inmate account.

{¶ 7} The trial court imposed an aggregate $50,000 fine as part of Braden's sentence and included the fine in the judgment of his conviction. Braden argues it was error for the trial court to impose the fine because he had been declared indigent.

However, "under the doctrine of res judicata, a final judgment bars a convicted defendant from 'raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment.' " *State v. Burnett*, 10th Dist. No. 08AP-304, 2008-Ohio-5224, ¶ 5, quoting *State v. Perry*, 10 Ohio St.2d 175 (1967), paragraph nine of the syllabus. Braden did not challenge the imposed fine on direct appeal even though he could have. Thus, the doctrine of res judicata applies to preclude Braden from raising this issue through a post-judgment motion to waive fines and costs. *Id.*

{¶ 8} As to the imposition of costs, R.C. 2947.23(C), effective March 22, 2013, provides "[t]he court retains jurisdiction to waive, suspend, or modify the payment of the costs of prosecution, including any costs under section 2947.231 of the Revised Code, at the time of sentencing or at any time thereafter." However, this court has recently held that "where sentence was imposed and the judgment became final *before* the effective date of [the most recent version of R.C. 2947.23(C)], the trial court cannot 'retain[] jurisdiction' to waive, suspend, or modify costs when it did not have the authority to do so at the time of sentencing." (Emphasis sic.) *State v. Banks*, 10th Dist. No. 17AP-210, 2017-Ohio-7135, ¶ 10, quoting R.C. 2947.23(C). The judgment of Braden's conviction and sentence, including the imposition of costs, became final in 2003 when the Supreme Court of Ohio affirmed his conviction, long before the effective date of the current version of R.C. 2947.23(C). Thus, res judicata bars Braden's argument regarding the imposition of costs. *Id.* at ¶ 11.

{¶ 9} Braden also notes that the judgment entry of his conviction and sentence does not mention costs. There is no dispute, however, that the trial court orally informed Braden at his sentencing hearing of his obligation to pay costs, and the trial court noted the imposition of costs on its separately filed criminal disposition sheet. Further, "costs are distinct from criminal punishment," and " 'a judgment for costs in a criminal case is a civil, not a criminal, obligation.' " *State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, ¶ 20, quoting *Strattman v. Studt*, 20 Ohio St.2d 95, 103 (1969). Thus, the trial court's failure to include costs in the sentencing entry does not operate to preclude the application of res judicata to allow this court to review the actual imposition of costs at

this time.  Braden did not challenge the trial court's imposition of costs at trial or during his direct appeal, and the doctrine of res judicata prevents him from raising that argument at this time.

{¶ 10} Moreover, to the extent Braden's motion challenges the manner or method of collection of the costs by DRC or the prison warden, we note that neither DRC nor the warden is a party to this action, and, thus, Braden's motion is an improper means to challenge the collection process.  *State v. Good*, 10th Dist. No. 03AP-549, 2004-Ohio-1736, ¶ 6 (defendant's post-judgment motion to quash attempting to challenge the process the prison warden used to take money from his prison account was "insufficient to invoke either the trial court's or [the appellate] court's jurisdiction and should have been initiated below" by either a civil complaint or petition for extraordinary relief).  Braden must file an original action pursuant to Civ.R. 3(A) in order to challenge the collection procedure being used to take funds from his inmate account.  *Id.* at ¶ 5-6 (noting "any type of motion * * * is insufficient to commence an action" and that an inmate "must file an original action pursuant to Civ.R. 3(A)" in order to properly invoke the trial court's jurisdiction).  Thus, the trial court did not err in denying Braden's motion with regard to the collection procedures.  Accordingly, we overrule Braden's sole assignment of error.

## IV.  Disposition

{¶ 11} Based on the foregoing reasons, res judicata bars Braden's argument related to the imposition of a fine, the trial court did not abuse its discretion in declining to waive costs, and Braden's motion was not the proper method to challenge the collection procedures used by the warden or DRC.  Having overruled Braden's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN and BRUNNER, JJ., concur.

BRUNNER, J., concurring.

{¶ 1}   I concur with the decision of the majority and would add that, although the trial court did not abuse its discretion in determining it would not waive Braden's costs in the action, there exists recently developed resources to aid trial judges in exercising such discretion.  It is worthwhile to bring them to light and for reference for future trial court

decisions involving the imposition of fines in the first instance and on postconviction and other post-trial motions and actions.

{¶ 2}    The National Center for State Courts has coordinated a National Task Force on Fines, Fees and Bail Practices, a joint effort of the Conference of Chief Justices and the Conference of State Court Administrators, sponsored by the State Justice Institute and the Bureau of Justice Assistance of the U.S. Department of Justice ("Task Force").  The Task Force has produced a "Bench Card for Judges" for the "Lawful Collection of Legal Financial Obligations" and defined "legal financial obligations" to "include all discretionary and mandatory fines, costs, fees, state assessments, and/or restitution in civil and criminal cases."[1]  While the initial focus of the bench card is providing procedural due process and to avoid incarceration for the failure to pay court-ordered legal financial obligations, the Task Force has provided guidelines for what is adequate notice of a hearing to determine ability to pay, meaningful opportunity to explain at the hearing, factors to consider to determine willfulness in not paying, findings by the court and alternative sanctions to imprisonment that courts should consider when there is an inability to pay.

{¶ 3}    Thus, as a trial court exercises its discretion, the Task Force suggests these specific alternative sanctions when there is an inability to pay: (1) reduction of the amount due; (2) extension of the time to pay; (3)  a reasonable payment plan or modification of an existing payment plan; (4) credit for community service, with the caution that hours ordered should be proportionate to the violation and take into consideration any disabilities, driving restrictions, transportation limitations,  and caregiving and employment responsibilities of the individual; (5) credit for completion of a relevant, court-approved program such as education, job skills, mental health or drug treatment; and (6) waiver or suspension of amounts due. The Task Force, according to the article, "The Work of the National Task Force on Fines and Bail Practices," co-authored by Ohio's Chief Justice, Maureen O'Connor, "was established * * * to develop policies and recommendations that promote the fair, efficient enforcement of the law; ensure no

---

[1]  *See* National Task Force on Fines, Fees and Bail Practices, *Lawful Collection of Legal Financial Obligations,*
http://www.ncsc.org/~/media/Images/Topics/Fines%20Fees/BenchCard_FINAL_Feb2_2017.ashx (accessed Sept. 22, 2017).

citizen is denied access to justice based on race or lack of economic resources; and promote fairness and transparency in handling legal financial obligations."[2]     The resources referenced in the footnotes of this concurring decision may assist trial judges in imposing legal financial obligations, thereby contributing to the integrity of the judicial system and in increasing public confidence in the judiciary.   At a minimum, these resources may aid a thorough pre-sentence process for considering the ability to pay. Such fair and pragmatic imposition of legal financial obligations may reduce the number of post-trial and postconviction proceedings and reduce strain on limited trial court time and financial resources brought by motions such as Braden's.

---

[2] *See* National Center for State Courts, *Fines, Fees, and Bail Practices: Challenges and Opportunities*, http://www.ncsc.org/~/media/Microsites/Files/Trends%202017/Work-of-Task-Force-Fines-Fees-Trends-2017.ashx (accessed Sept. 22, 2017).